IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**EDNA MARTINEZ-RIVERA, et al.,**

**Plaintiffs,**

**v.**                                                              Civil No. 11-1184 (GAG)

**COMMONWEALTH OF PUERTO RICO, et al.,**

**Defendants.**

## OPINION AND ORDER

Edna Martinez-Rivera ("Martinez-Rivera") and Szaritsa Quiles-Gomez ("Quiles-Gomez") (together "Plaintiffs") filed this action claiming disability and political discrimination based on the First, Fifth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1981 *et seq.*, 42 U.S.C. §§ 1983 *et seq.*, 42 U.S.C. §§ 1988 *et seq.*, 42 U.S.C. §§ 2000d *et seq.*, Article 2 of the Constitution of the Commonwealth of Puerto Rico, and Articles 1802 and 1803 of the Civil Code of Puerto Rico, P.R. Law Ann. tit. 31, §§ 5141-5142. RCM (a minor child of Martinez-Rivera), Lydia Rivera O'Farrill (Martinez-Rivera's mother), Lydia Janet Martinez (Martinez-Rivera's sister), and Isidra A. Gomez Alicea (Quiles-Gomez's mother) (collectively "Family Members") join the suit for derivative damages due to emotional pain and suffering. The defendants, governmental agencies, officials and two unknown insurance companies (the "Defendants"), move to dismiss the claims pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction due to the statute of limitations. After reviewing the parties' submissions and applicable laws, the court **GRANTS in part and DENIES in part** Defendants' motion (Docket Nos. 23 and 53).

**I.     Standard of Review**

"The general rules of pleading require a short and plain statement of the claim showing that the pleader is entitled to relief." Gargano v. Liberty Intern. Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009) (citations omitted) (internal quotation marks omitted). "This short and plain statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it

**Civil No. 11-1184 (GAG)**

1  rests.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

2  Federal Rule of Civil Procedure 12(b)(1) is '[t]he proper vehicle for challenging a court's
3  subject-matter jurisdiction." Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362 (1st Cir. 2001). Rule
4  12(b)(1) is a "large umbrella, overspreading a variety of different types of challenges to subject-
5  matter jurisdiction." Id. at 362-363. A moving party may base a challenge to the sufficiency of the
6  plaintiff's assertion of subject matter jurisdiction solely on the pleadings. Med. Card Sys. v. Equipo
7  Pro Convalencia, 587 F. Supp. 2d 384, 387 (D.P.R. 2008) (citing Hosp. Bella Vista, 254 F.3d at
8  363).

9  A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(1) is subject to a
10 similar standard of review as a motion brought pursuant to Rule 12(b)(6). Boada v. Autoridad de
11 Carreteras y Transportacion, 680 F. Supp. 2d 382, 384 (D.P.R. 2010) (citing Negron-Gaztambide
12 v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir. 1994)).

13 Under Rule 12(b)(6), a defendant may move to dismiss an action against him for failure to
14 state a claim upon which relief can be granted. See FED. R. CIV. P. 12(b)(6). To survive a Rule
15 12(b)(6) motion, a complaint must contain sufficient factual matter "to state a claim to relief that
16 is plausible on its face." Twombly, 550 U.S. at 570. The court must decide whether the complaint
17 alleges enough facts to "raise a right to relief above the speculative level." Id. at 555. In so doing,
18 the court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's
19 favor. Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008). However, "the tenet that a court must
20 accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."
21 Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements
22 of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly,
23 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the
24 mere possibility of misconduct, the complaint alleged –but it has not show[n]– that the pleader is
25 entitled to relief." Iqbal, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)) (internal quotation
26 marks omitted).

27

28                                                    2

**Civil No. 11-1184 (GAG)**

## II. Relevant Factual & Procedural Background

Plaintiffs bring this discrimination action as a result of their termination from their respective positions for the Department of Labor and Human Resources at the Vocational Rehabilitation Administration ("VRA"). Plaintiffs were assigned to the Legal Affairs Office as Principal Attorneys. (See Docket No. 1 at ¶ 1.)

### a. Martinez-Rivera

On September 3, 1996, Martinez-Rivera began work in the Office of the Ombudsman for the Handicapped as a Legal Technician. (See id. at ¶ 4.) This position required Martinez-Rivera to preside over administrative hearings for cases where mediation was unsuccessful. (See id. at ¶ 5.) On April 16, 1998, Martinez-Rivera was promoted to the title of Lawyer I and then on April 1, 2001, was promoted again to the position of Counsel II. (See id. at ¶ 6.) On March 1, 2002, Martinez-Rivera was promoted to Director of the Office of Legal Affairs for the VRA and was appointed the Auxiliary Administrate of the Office of Administration at the VRA in 2004. (See id. at ¶ 8.)

After the election of Governor Luis Fortuno-Burset, Plaintiff Martinez-Rivera began to experience a pattern of reprisals due to her political affiliation and her disability. (See id. at ¶ 9.) Martinez-Rivera claims she was subjected to discriminatory remarks regarding her disability and political affiliation. (See id.) Between January 2009 until approximately June 2009, her advisory duties, drafting and reviewing contracts duties, her representation of the agency when in front of other agencies and, "many other regular duties" were given to other employees. (See Docket No. 1 at ¶ 14.) Between January 16 and 20, 2009, Defendants relocated Martinez-Rivera to an office with sub-par facilities, took away her access keys to the office of the administration, denied her access to previously allowed areas and removed files from her control. (See id. at ¶ 16.) On July 16, 2009, Defendant Perez Cueto issued a letter requiring Martinez-Rivera to report to him before taking any action on any situation during the course of her official capacity. (See id. at ¶ 17.)

On January 15, 2009, Martinez-Rivera received a letter informing her that due to Act 7 of

**Civil No. 11-1184 (GAG)**

May 9, 2009 ("Act 7") she would be terminated from her position as Chief Attorney effective February 19, 2010. (See Docket No. 23-1.)[1] On July 12, 2010, Martinez-Rivera filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging political and disability discrimination. (Docket No. 52-4). Martinez-Rivera sought a right to sue letter from the EEOC on February 2, 2011 and filed the present suit on February 17, 2011. (See Docket No. 1.) She ultimately received the right to sue letter from the EEOC on March 18, 2011 (Docket No. 40-2).

Martinez-Rivera claims that her political affiliation was known throughout the department at all relevant times and that her disability is visible as it affects her mobility and was also known to all those at the VRA at all relevant times. (See Docket No. 1 at ¶¶ 10-12.)

    **b.**    **Quiles-Gomez**

Quiles-Gomez was reassigned from the Secretary of the Department of Family to the VRA in March 2003. (See Docket No. 1 at ¶ 24.) After January 2009, the employment dynamics of the Office of Legal Affairs changed so that a significant volume of situations, cases, consultations, and bills previously handled by Quiles-Gomez were diverted to other employees. (See id. at ¶ 26.) Quiles-Gomez was carefully watched and directly supervised by Defendants before her work could be released. (See id. at ¶ 27.) Eventually she was not allowed to answer any public query or tend to any telephone consultation. (See id. at ¶ 28.)

In October 2009, Quiles-Gomez was given a termination letter effective November 6, 2009.

---

[1] "Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." Alt. Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d at 30, 33 (1st Cir. 2001) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). However, there is "a narrow exception 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to the plaintiffs' claim; or for documents sufficiently referred to in the complaint.'" Alt. Energy, Inc., 267 F.3d at 33 (quoting Watterson, 987 F.2d at 3). The complaint refers to the termination letter of Quiles-Gomez, but does not refer to the termination letter of Martinez-Rivera. (See Docket No. 1 at ¶ 32.) Plaintiffs do not dispute the authenticity of the termination letter sent to Martinez-Rivera dated January 15, 2010. The termination letter may be considered by the court without converting the present motion to dismiss into a motion for summary judgment because it is not disputed by the parties and therefore meets one of the exceptions.

**Civil No. 11-1184 (GAG)**

(See id. at ¶ 29.) Quiles-Gomez left the office only to be notified that same day that the termination had been voided due to an unauthorized signature and that she was expected to return to work the following day. (See id.) Due to the stress of the events and her perception that she was being discriminated against due to her age and political affiliation, Quiles-Gomez remained at home to rest for three weeks upon a medical recommendation. (See Docket No. 1 at ¶ 30.) When Quiles-Gomez returned to work three weeks later she discovered all of her assigned cases had been reassigned and there was no new assignments pending. (See id. at ¶ 31.) On January 15, 2010, the VRA delivered a second termination letter to Quiles-Gomez, stating that her termination was effective February 19, 2010. (See id. at ¶ 32.) While Quiles-Gomez did not believe this termination letter would ultimately be executed, because her previous termination letter was rescinded, this termination letter was executed. (See id. at ¶ 33.) On February 12, 2010, Quiles-Gomez filed an appeal with the Appelative Commission of the Administration System of Human Resources of Public Service ("CASARH" the Spanish acronym for Comision Apelativa del Systema de Administracione Recursos Humanos del Servicio Publico) (Docket No. 52-1). She was terminated on February 19, 2010. CASARH denied her appeal on May 12, 2010 and she filed this suit on February 17, 2011. (See Docket Nos. 1 at ¶¶ 32, 52-2 & 1.)

Plaintiffs further claim that since their termination, two younger attorneys and a law firm have been hired to take their positions and complete their duties. (See Docket No. 1 at ¶ 33.) Plaintiffs claim the criteria used to determine their terminations were applied selectively in order to protect members of the New Progressive Party. (See id. at ¶ 34.)

**c.     Family Members**

All the family members claims arise out of the emotional pain and suffering caused by the above detailed events. At the time of the events, RMC and Lydia Rivera O'Farrill were financially dependant upon Martinez-Rivera and therefore received the brunt of pain and suffering. (See id. at ¶ 36.) Isidra A Gomez Alicea witnessed the discriminatory acts, pain and suffering and also suffered mental and emotional anguish due to the nature of the discrimination focused on her sister.

**Civil No. 11-1184 (GAG)**

(See id. at ¶ 38.)

**III.    Analysis**

Defendants argue Plaintiffs' suit is time-barred because the statute of limitations had expired prior to February 17, 2011, the date the action was filed. For Section 1983 actions, federal law governs the date on which the statute of limitations begins to run, but, "borrow[s] the appropriate state law governing limitations unless contrary to federal law." Marrero-Gutierrez v. Molina, 491 F.3d 1, 5 (1st Cir. 2007) (quoting Poy v. Boutselis, 352 F.3d 479, 483 (1st Cir. 2003)). For section1983 claims, the statute of limitations for personal injury cases controls. See McNamara v. City of Nashua, 629 F.3d 92, 95 (1st Cir. 2011); Owens v. Okure, 488 U.S. 235, 236 (1989). As agreed by the parties, the statute of limitations governing personal injury claims in Puerto Rico is one year. See P.R. Law Ann. tit. 31, § 5298(2); Marrero-Gutierrez, 491 F.3d at 5. Plaintiffs argue they did not know or have reason to know of the discriminatory nature of their terminations until on or after February 19, 2010. Additionally, Plaintiffs argue that they commenced administrative proceedings that tolled the statute of limitations. Plaintiffs assert that these defenses tolled the limitations period well beyond February 17, 2011, the date they filed the present complaint.

**a.    Date of Accrual**

The statute of limitations begins to run in employment discrimination cases, "normally. . . when the employer's decision is made and communicated to the affected employee." Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 750 (1st Cir. 1994). Any form of unequivocal and authoritative notice of an adverse employment action is sufficient to trigger the limitations period. See Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 353 (1st Cir. 1992) (holding limitations period begins when employee is reliably informed of adverse employment decision). Termination letters, that unambiguously convey final termination to the employee, commence the statute of limitations period. Rivera-Gomez v. Castro, 843 F.2d 631, 632 (1st Cir. 1988).

Plaintiffs received termination letters on January 15, 2010. The letters unambiguously informed them of their termination effective on February 19, 2010. Based on these letters, the

**Civil No. 11-1184 (GAG)**

statute of limitations for filing a claim would end on January 16, 2011.  See Gonzalez Garcia v. Puerto Rico Elec. Power Auth., 214 F. Supp. 2d 194, 200 (D.P.R. 2002) (stating statute of limitations begins running one day after the date of accrual). However, Plaintiffs argue the accrual date did not commence until after they learned of the discriminatory animus behind the termination decision. Plaintiffs refer to federal case law to support the argument that the limitations period did not accrue until they, "knew or had reason to know" of the discriminatory animus behind the decision. Id.

However, the First Circuit has rejected the theory that a claim does not accrue until the plaintiff has learned of both the adverse employment decision and the discriminatory animus behind the decision. See Marrero-Gutierrez v. Molina, 491 F.3d 1, 6 (1st Cir. 2007) ("There is simply no support for [the plaintiff's] argument that this date ought to be suspended until he learned the discriminatory motives behind the discrete act."). It is not essential for a plaintiff to know of the discriminatory animus behind the termination in order for the limitations period to begin to run. Morris, 27 F.3d at 749-50. More broadly, the Morris court held that a plaintiff does not need to know all of the facts supporting the cause of action in order for the limitations period to begin. Id. This rule is one of fairness to all parties because once an employee is adversely effected and knows the employer is responsible for the adverse decision, there is sufficient notice of a potential claim and the statute of limitations should begin to run. See Rodriguez Narvaez v. Nazario, 895 F.3d 38, 42-43 (1st Cir. 1990); Rodriguez-Garcia v. Municipality of Caguas, 354 F.3d 91, 97 (1st Cir. 2004). One exception to this long-standing rule is when a reasonable person would not have been able to discover the basis for the lawsuit because of an active or fraudulent concealment by the employer. See Rivera-Ramos v. Roman, 156 F.3d 276, 282 (1st Cir. 1998) (citing Rivera-Gomez v. de Castro, 900 F.2d 1, 3 (1st Cir. 1990)). In the case of fraudulent concealment, Puerto Rico law requires the plaintiff to perform due diligence in order to investigate suspicious circumstances. Rivera-Ramos, 156 F.3d at 282. Thus, even in the case of fraudulent concealment, Plaintiffs' claims are not automatically tolled.

**Civil No. 11-1184 (GAG)**

Plaintiffs point to three cases to show that their causes of action did not begin to run until Plaintiffs learned of the discriminatory animus underpinning their claims. However, these cases do not hold that discrimination claims begin to run when a plaintiff knows or should know of the discriminatory animus behind an adverse employment decision. Instead these cases clarify when a plaintiff knows or should know of an adverse employment decision. See Chardon v. Fernandez, 454 U.S. 6, 8 (1981) (holding limitations period commenced when plaintiffs received unambiguous letter stating termination, not when employment actually ceased); Delaware State Coll. v. Ricks, 449 U.S. 250, 258 (1980) (holding statute of limitations begins when adverse employment decision is conveyed to employee, not when the effect is felt by employee); Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 353 (1st Cir. 1992) (holding statute of limitations began when plaintiff received pay for unused vacation days and had been taken off payroll). All three of these cases clarify and hold that the statute of limitations period begins to run when the employee is informed of the adverse decision, usually well before the actual termination date. In the present case, Plaintiffs were informed of their termination on January 15, 2010. This date began the limitations period for Plaintiffs. As Plaintiffs did not file suit until February 17, 2011, the suit is time barred unless the statute was tolled due to the administrative proceedings initiated by Plaintiffs.

    **b.**    **Administrative Proceedings**

        **i.**    **Martinez-Rivera**

Martinez-Rivera argues her attempted filing of an administrative claim with Anti-Discrimination Unit for Human Resources of the Labor Department of the Commonwealth and her filing with the EEOC tolls the statute of limitations for her current claims. The court focuses on the EEOC filing because it was a necessary procedural step and was filed within the limitations period, therefore the EEOC filing controls the analysis.[2][3] A timely filed complaint with the EEOC tolls the

---

[2] The appeal was made to the Anti-Discrimination Unit on February 12, 2010. (See Docket No. 34-4 at 17.) Even if the attempted filing of this complaint resets the limitations period, the period would have expired on February 12, 2011. The complaint was not filed until February 17,

**Civil No. 11-1184 (GAG)**

statute of limitations. See Gonzalez-Figueroa v. J.C. Penny Puerto Rico, Inc., 568 F.3d 313, 322 (1st Cir. 2009) (holding EEOC filing tolls period for suit under Puerto Rico laws). The statute of limitations would be tolled until July 12, 2011 because the date the statute begins to run is reset under Puerto Rico's laws. See Cintron-Lorenzo v. Fondo del Seguro del Estado, 634 F.3d 1, 2 (1st Cir. 2011) (holding statute of limitations is not suspended until resolution of EEOC filing, it is merely reset).

Here, Martinez-Rivera filed a complaint with the EEOC on July 12, 2010, within the 180 day deadline to file with the EEOC. (See Docket No. 34-2 at 13.)[4] On February 2, 2011, Martinez-Rivera sought a right to sue letter from the EEOC. Martinez-Rivera filed suit on February 17, 2011. (Docket No. 1). The right to sue letter was issued by the EEOC on March 18, 2011. (See Docket No. 40-1.) The filing of the EEOC complaint effectively reset the date on which the statute of limitations began to run. The new statute of limitations period ended on July 12, 2011, meaning the current suit was filed within the statute of limitations period.

However, as argued by Defendants, Martinez-Rivera filed suit without having received a right to sue letter. The right to sue letter was not issued until March 18, 2011. While Martinez-Rivera complied with the statute of limitations, she had not exhausted her administrative remedies prior to filing this action. The, "failure to exhaust th[e] administrative process bars the courthouse

---

2011, five days later.

[3] The court cites to the original Spanish language document filed with the court (Docket No. 34-4). The court notes that this document was translated into English and submitted to the court (Docket No. 52-6), but the English translation misinterpreted the date on the last page to read December 1, 2009. The date on the original is February 12, 2010 "12 de febrero de 2010").

[4] The court cites to the original Spanish language document filed with the court (Docket No. 34-2). The court notes that this document was translated into English and submitted to the court (Docket No. 52-4), but the English translation misinterpreted the date on the last page to read December 1, 2009. The date on the original is July 12, 2010 ("12 de julio de 2010") and the document was stamped as received by the EEOC on the first page. That date was translated properly as July 12.

**Civil No. 11-1184 (GAG)**

door." Franceschi v. U.S. Dep't of Veterans Affairs, 514 F.3d 81, 85 (1st Cir. 2008) (internal quotation marks omitted). If the EEOC has not been given the full opportunity to take final action, then the administrative remedies have not been exhausted. See id. at 86. It is a 'bedrock' rule that time limitations are important in discrimination cases. See Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 278 (1st Cir. 1999) (holding Title VII's charge requirement as a prerequisite to filing suit). At the time the present complaint was filed, Martinez-Rivera had not exhausted her administrative remedies. Even though Martinez-Rivera secured the right to sue letter after the complaint was filed, the court could not properly adjudicate the claim at the time it was filed. Therefore, the court **GRANTS** Defendants' motion to dismiss the claims by Martinez-Rivera.

### ii.   Quiles-Gomez

Plaintiff Quiles-Gomez does not assert violations of the ADA and therefore it is not necessary for her to receive a right to sue letter prior to filing suit in court. Upon losing her position, Quiles-Gomez filed an appeal before CASARH on February 12, 2010. (See Docket No. 52-1.) CASARH denied her petition and Quiles-Gomez appealed to a three member panel of CASARH. (See Docket No. 52-2.) On May 12, 2010, that panel upheld the previous decision of CASARH, finalizing the administrative remedies available to Quiles-Gomez. (See Docket No. 52-2.)

Article 1873 of the Puerto Rico Civil Code allows the statute of limitations period to be tolled under specific circumstances, such as the filing of an administrative proceeding. See 31 P.R. Laws Ann. § 5303 (statute of limitations tolled "by extrajudicial claim of the creditor" Id.); Moran Vega v. Cruz Burgos, 537 F.3d 14, 21 (1st Cir. 2008) (holding administrative proceeding to be an extrajudicial appeal under § 5303). Under Puerto Rico law, the statute is reset and begins to run once the administrative claim is resolved. See Rodriguez v. Suzuki Motor Corp., 570 F.3d 402, 408 (1st Cir. 2009). In order to toll the statute of limitations: (1) the claims must be identical; (2) the causes of action must be based on the same substantive claims; and (3) the defendants must be the same. See Rodriguez-Garcia v. Municipality of Caguas, 354 F.3d 91, 98 (1st Cir. 2004). Additionally, the relief sought from the administrative proceeding must be the same as sought in

**Civil No. 11-1184 (GAG)**

court. See Moran Vega v. Cruz Burgos, 537 F.3d 14, 21 (1st Cir. 2008) (holding administrative action for reinstatement different than suit for legal damages). The mere filing of one action will not preserve all causes of action that arise out of the same facts. See Rodriguez-Garcia, 354 F.3d at 97. To allow all claims would allow plaintiffs to disregard the purpose of statute of limitations, putting Defendants on notice of potential claims in a timely matter. See id.

The political discrimination action presented in Quiles-Gomez's CASARH appeal is sufficiently identical to the complaint filed with this court. In the CASARH appeal, Quiles-Gomez claims two causes of action: (1) that because of her length of service, she should not have lost her job (see Docket No. 52-1 at ¶¶ 13-25) and (2) she was terminated because of her political affiliation (See Docket No. 52-1 at ¶¶ 27-28.). In the instant complaint, Quiles-Gomez argues that she was terminated because of her political affiliation (see Docket No. 1 at ¶ 34) and in violation of her due process rights secured through her length of employment (See Docket No. 1 at ¶¶ 58-60). Only these two claims are timely in the current suit because no other cause of action was argued to CASARH. All other claims are barred by the statute of limitations because they were not tolled when Quiles-Gomez filed her administrative appeal with CASARH. (See id.)

With regards to the relief sought, Quiles-Gomez seeks reinstatement to her former position in both the CASARH appeal, as well as in the present complaint. (See Docket Nos. 52-1 at ¶ 13;1 at ¶ 81.) Additionally, Quiles-Gomez seeks monetary damages in the current complaint. (See Docket No. 1 at ¶¶ 75-78; 81-82.) The relief sought, other than for her reinstatement, is new to this complaint and is time barred. See Hernandez Del Valle v. Santa Aponte, 575 F.2d 321, 323 (1st Cir. 1978) (holding money damages only available if demand for monetary damages was made in the demand letter that tolled the statute of limitations). See also Nieves-Vega v. Ortiz-Quinones, 443 F.3d 134, 137 (1st Cir. 2006) (holding prior relief sought must match relief sought in current law suit).

The political discrimination and due process claims are also sufficiently identical to satisfy the tolling requirements. See Rodriguez-Garcia, 354 F.3d at 98. However, the addition of new

**Civil No. 11-1184 (GAG)**

defendants, who were not named defendants in the CASARH appeal, cannot be added at this juncture. The claims against these defendants have not been tolled by the administrative proceedings. See id. The CASARH appeal named the VRA and the Board of Restructuring and Fiscal Stabilization ("JREF" for its Spanish acronym). (See Docket No. 52-1.) The present complaint does not name JREF, but does name the VRA as well as a host of other defendants. (See Docket No. 1.) The claims against all the defendants, except for the VRA, are time barred because the CASARH appeal does not toll claims against any other named defendant. See Rodriguez-Garcia, 354 F.3d at 98.

Pursuant to the above, Quiles-Gomez's claims against the VRA for political discrimination and due process have been properly tolled. Furthermore, the remedy for reinstatement is the only remedy available to Quiles-Gomez because it was the only remedy sought in the CASARH appeal. Therefore, the court **GRANTS in part and DENIES in part** Defendants' motion to dismiss the claims by Quiles-Gomez.

**IV.    Conclusion**

Pursuant to the opinion and analysis above, the court **GRANTS** Defendants' motion to dismiss all claims brought by Martinez-Rivera. The court **DENIES** Defendants' motion to dismiss as to Quiles-Gomez's claim for reinstatement to her position at the VRA, but **GRANTS** Defendants' motion to dismiss all other claims brought by Quiles-Gomez. The court **GRANTS** Defendants' motion to dismiss all of the claims by Family Members because they are either dependant upon Martinez-Rivera's claims or because they were filed after the statute of limitations had run.

**SO ORDERED.**

In San Juan, Puerto Rico this 16th day of November 2011.

*s*/Gustavo A. Gelpí
GUSTAVO A. GELPI
United States District Judge

12